A07A2098. CASTILLO v. THE STATE.
(655 SE2d 695)

MILLER, Judge.

Maria Vargas Castillo appeals from her convictions of trafficking in methamphetamine and possession of cocaine, asserting that the State presented insufficient evidence of her guilt. Discerning no error, we affirm.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and [the defendant] no longer enjoys a presumption of innocence." (Citations and punctuation omitted.) *Jackson v. State*, 252 Ga. App. 268 (1) (555 SE2d 908) (2001). We determine only whether the evidence authorized the jury to find the defendant guilty beyond a reasonable doubt, and in doing so we neither weigh that evidence nor judge the credibility of the witnesses. Id.; *Morgan v. State*, 277 Ga. App. 670, 671-672 (1) (627 SE2d 413) (2006).

So viewed, the evidence shows that on June 3, 2005, a Clayton County police officer placed a telephone order for the purchase of an ounce of methamphetamine. An unidentified person answered, agreed to sell the drugs, and provided an address where the purchase could be made. The following day, Officer Eric Arroyo and a uniformed officer went to that address to conduct a "knock and talk" with the residents. Castillo's co-defendant, Luis Coba Rubia, answered the door, and the officers identified themselves and asked to come in. Once admitted to the residence, the officers explained that they were

conducting a drug investigation and asked for Rubia's permission to search the premises, which Rubia gave.

During that search, the officers discovered a plastic container holding a large quantity of methamphetamine in the furnace closet and a smaller quantity of methamphetamine[1] and 3.20 grams of cocaine in the bedroom where Castillo was sleeping. Approximately one ounce of methamphetamine was found, packaged as if for sale, underneath the mattress on which Castillo and her husband, Oscar Maldonado, had been sleeping. Under that same mattress, officers found two digital scales, of the kind generally used to facilitate the sale of illegal drugs. Next to that bed, police found a book, which they described as a drug log, that listed phone numbers, prices, and dollar amounts owed. In a chifforobe located at the foot of Castillo and Maldonado's bed, police found the cocaine and more methamphetamine. Also discovered in that bedroom were a heat sealer, commonly used in packaging illegal drugs, and Castillo's purse, containing $1,153 in cash. An additional $2,759 in cash was found in the apartment.

Police were unable to determine in whose name the apartment was leased, but Castillo told officers that the apartment was hers. The two men staying in the apartment's second bedroom confirmed this fact, telling police that they had rented the bedroom from Castillo and paid rent to her. Additionally, law enforcement discovered in the apartment a bill for satellite television services at that address and bearing Castillo's name.

Castillo, Maldonado, and Rubia were each subsequently charged with one count of trafficking in methamphetamine and one count of possession of cocaine. All three were convicted after a jury trial, and Castillo thereafter filed this appeal,[2] arguing that the evidence presented at trial was insufficient to sustain her convictions. We disagree.

To prove the charges, the State was required to show that Castillo was in knowing possession of the drugs found in her residence and that the methamphetamine found totaled 28 grams or more. See OCGA §§ 16-13-30 (a); 16-13-31 (e). Castillo asserts that because there were several people, including her co-defendants, living in the apartment at the time police conducted their search, the drugs could have belonged to any of them and, under the equal access rule, the State failed to prove possession.

---

[1] The total amount of methamphetamine seized from the apartment was 148.99 grams.

[2] Rubia filed a separate appeal, and this Court affirmed his conviction in *Rubia v. State*, 287 Ga. App. 122 (650 SE2d 797) (2007).

The equal access defense relied upon by Castillo is "based on the rule that merely finding contraband on premises occupied by a defendant is not sufficient to support a conviction if it affirmatively appears from the evidence that persons other than the defendant had equal opportunity to commit the crime." *Andrews v. State*, 219 Ga. App. 808, 809 (1) (466 SE2d 909) (1996). While the fact that Castillo's co-defendants had equal access to some of the drugs may inculpate them, however, such evidence does not automatically exculpate Castillo. See, e.g., *Cantrell v. State*, 204 Ga. App. 330, 331 (419 SE2d 141) (1992). Instead, "[w]hether the evidence that others had access to the contraband was sufficient to rebut the evidence that [Castillo] was in possession of the drug[s] was properly reserved for the jury." *McWhorter v. State*, 275 Ga. App. 624, 629 (1) (b) (621 SE2d 571) (2005).

The evidence presented at trial permitted the jury to find that, rather than proving Castillo's innocence, the evidence of equal access to the drugs proved that she and her co-defendants had joint constructive possession of the contraband.

> Beyond a defendant's spatial proximity to the drugs, constructive possession may be shown by demonstrating the defendant knowingly had both the power and intention at a given time to exercise control over the substance. Power may be inferred from access to the drugs, while the matter of intent may be derived from the surrounding circumstances.

(Footnotes omitted.) *In the Interest of Q. P.*, 286 Ga. App. 225, 226-227 (648 SE2d 731) (2007).

Here, the evidence showed that Castillo had access to the drugs, given that she identified the residence as "her apartment," that she had rented the apartment's second bedroom, and that police recovered a bill for satellite television services to the apartment in her name. Such access to the drugs permitted the jury to infer that Castillo had the power to exercise control of the same.

The evidence from which the jury could have inferred Castillo's intent to exercise such control included the fact that some of the drugs were found in a bedroom occupied by Castillo, along with a drug log and materials routinely used to facilitate the distribution of drugs. Several of these items, including a quantity of methamphetamine apparently packaged for distribution, were found underneath the mattress on which Castillo had been sleeping. Finally, large quantities of cash were found in the apartment, and over $1,000 in cash was found in a purse identified as Castillo's.

This evidence was sufficient to support the jury's guilty verdict as to Castillo (see, e.g., *Stevens v. State*, 245 Ga. App. 237, 239 (2) (537 SE2d 688) (2000)), and we therefore affirm the same.

*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED DECEMBER 11, 2007.

*Theresa A. Hood,* for appellant.
*Jewel C. Scott, District Attorney, Anece Baxter White, Assistant District Attorney,* for appellee.